[No. B177372. Second Dist., Div. Four. Apr. 6, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE McELWEE Defendant and Appellant.

**COUNSEL**

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, William T. Harter and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**EPSTEIN, P. J.**—Dwayne McElwee appeals from an order of the superior court denying a writ of error *coram nobis*. For reasons explained in the opinion, we affirm the order.

### FACTUAL AND PROCEDURAL SUMMARY

On April 20, 2004, Dwayne McElwee filed a petition for writ of error *coram nobis* to vacate the judgment entered against him on March 5, 1984. McElwee asserted in the petition that on March 5, 1984, pursuant to a plea bargain, he pled guilty to second degree murder for the murder of Gary Morris committed September 30, 1981, a lesser offense to the charged crime of first degree murder. As part of the bargain, a firearm use allegation was stricken. McElwee was sentenced to an indeterminate term of 15 years to life in prison. On February 4, 2004, the Board of Prison Terms held a subsequent parole hearing and Deputy District Attorney Dave Dahle argued against a parole date. "[T]he same District Attorney's Office, through its representative Dave Dahle, who 20 years ago, agreed that [McElwee's] crime was second degree murder and entered into the plea bargain with petitioner, violated . . . McElwee['s] right to Due Process by taking a different position in front of the Board Panel. Deputy District Attorney Dave Dahle described for the Board what he considered the commitment offense to be 'a cold, calculated, execution-style murder.' . . . [¶] In doing so he was essentially arguing that the murder was of the first degree and petitioner should be punished

accordingly." McElwee asserted by these actions the deputy district attorney subverted and circumvented the basis of the plea bargain. McElwee claimed he gave the state the substantial benefit of a murder conviction without protracted proceedings when he waived any defenses, i.e. those predicated on such facts as diminished capacity because he had been under the influence of PCP and such a defense was available for crimes committed in September 1981.

The California Board of Prison Terms concluded appellant was not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released. It stated the primary reason for the denial was the manner in which the crime was carried out, that it showed an obvious disregard for another human being's life. The Board in its decision recited the facts of the murder.

In denying the petition for a writ of error *coram nobis*, the superior court observed "[t]here is nothing in the petition to indicate petitioner was unaware of the fact that the Deputy District Attorney would oppose setting a parole date. Diligence in discovering the facts and presenting the petition are requisites for the writ. . . . [¶] The comments of the Deputy District Attorney at any of the five subsequent parole hearings would be important in determining whether petitioner acted with diligence. [¶] There is also nothing to show the judge would not have taken the plea if he knew the District Attorney might object to release before the life term was served. . . . [¶] Parole is the exclusive domain of the executive branch of the government. The Board of Prison Terms determines who will be paroled and when. No matter how long an inmate has been confined, he will not be paroled until first being found suitable for parole. . . . The Deputy District Attorney has only the duties described in CCR 2030[1] at parole hearings. He may comment on the facts of the case and present an opinion about the appropriate disposition but his opinion is only advisory. The facts surrounding the commission of the offense are as well known to the Board as to the Deputy District Attorney, since they are contained in the inmate's 'C' file. The fact remains that petitioner shot the victim through the back of his head and nothing that was or could be said would change that. Those were the facts on which the Board relied when it refused to set a parole date. And, only the Board could set a parole date, no matter what the position of the Deputy District Attorney. [¶] When one reads the plea agreement incorporated in the petition, there is nothing in the plea agreement that the District Attorney did not live up to. He reduced the offense to second degree murder and struck the 12022.5 P.C. allegation—personal use of a firearm. There is nothing in the agreement about the District Attorney's position with respect to parole. Nor is there anything in the agreement that the District Attorney would not participate via section 2030 of CCR. He

---

[1] California Code of Regulations, title 15, section 2030.

agreed that a sentence of 15 years to life would be imposed and the parole was up to the Board of Prison Terms. And this was all consistent with the plea agreement. [¶] The petition is denied. Petitioner fails to show how he was prejudiced by the District Attorney's conduct."

## DISCUSSION

■ "A writ of error *coram nobis* is reviewed under the standard of abuse of discretion. [Citation.]" (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 544 [90 Cal.Rptr.2d 536].) ■ "A writ of *coram nobis* permits the court which rendered judgment 'to reconsider it and give relief from errors of fact.' [Citation.] The writ will properly issue only when the petitioner can establish three elements: (1) that some fact existed which, without his fault or negligence, was not presented to the court at the trial and which would have prevented the rendition of the judgment; (2) that the new evidence does not go to the merits of the issues of fact determined at trial; and (3) that he did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the point at which he petitions for the writ. [Citations.]" (*People v. Soriano* (1987) 194 Cal.App.3d 1470, 1474 [240 Cal.Rptr. 328].) " 'The writ lies to correct only errors of fact as distinguished from errors of law. [Citation.]' [Citation.]" (*People v. Ibanez, supra,* 76 Cal.App.4th at p. 545.)

■ Here there is no new evidence. That appellant believed, at the time of his plea, that he would only serve 15 years in prison was not a mistake of fact but one of law. "[P]arole release decisions concern an inmate's anticipation or hope of freedom, and entail the Board's attempt to predict by subjective analysis whether the inmate will be able to live in society without committing additional antisocial acts. [Citation.] 'The [Board's] exercise of its broad discretion "involves the deliberate assessment of a wide variety of individual-ized factors on a case-by-case basis, and the striking of a balance between the interests of the inmate and of the public." [Citation.]' [Citation.] 'The [Board's] discretion in parole matters has been described as "great" [citation] and "almost unlimited" [citation].' [Citation.]" (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 655 [128 Cal.Rptr.2d 104, 59 P.3d 174].)

Even if we assume appellant's claim was a mistake of fact and that he would not have pled guilty had he known the district attorney's office would argue against parole, such a claim is subject to disbelief by the trial court. The transcript of the plea hearing establishes that the only promise made to appellant was that the charge would be reduced from first degree to second degree murder thereby reducing the minimum imprisonment and that the prosecution would strike the use allegation. There is nothing in the bargain that prohibits the circumstances of the crime being accurately described at a

parole hearing. Additionally, at sentencing appellant stated he understood that the charge of second degree murder "carries with it a prison term of *from 15 years in prison up to life*." (Italics added.) Appellant was facing a prescribed sentence of 25 years to life with an additional two years on the firearm enhancement if he went to trial. It is not reasonably probable appellant would have rejected the plea agreement even if he knew he could spend more than 15 years in prison. Appellant's claim that he did not know the district attorney's office would describe the murder as it actually occurred—that appellant shot his victim in the back of the head—is not a fact that, if presented to the trial court at the time of the guilty plea, would have prevented the rendition of the judgment.

While appellant suggests a waiver from appellant similar to that discussed in *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] would be appropriate, appellant was not suffering adverse sentencing consequences by reason of the facts of a dismissed count. Rather, the parole board was determining whether parole was appropriate in view of a number of factors, including the facts of the crime committed.

■ Based on the foregoing, we conclude the trial court did not abuse its discretion in denying the petition for a writ of error *coram nobis*.

## DISPOSITION

The order is affirmed.

Hastings, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 2005. Werdegar, J., did not participate therein.